18 Cal.App.3d 146 (1971)
95 Cal. Rptr. 572
Estate of M. JOHN SCHUMACHER, Deceased.
EVELYN L. SCHUMACHER, Petitioner and Appellant,
v.
CITY NATIONAL BANK, as Executor, etc., Objector and Respondent.
Docket No. 10657.
Court of Appeals of California, Fourth District, Division One.
June 16, 1971.
*148 COUNSEL
Aaron N. Cohen, Julien R. Bauer, Richard N. Rapoport and Marvin A. Burnett for Petitioner and Appellant.
N.E. Youngblood for Objector and Respondent.
OPINION
WHELAN, J.
Evelyn L. Schumacher, as guardian of Laura Mary Schumacher and Suzanne L. Schumacher, minors, appeals from an order setting aside an order for payment of family support for said minors under Probate Code section 681.
M. John Schumacher (Schumacher), a practicing psychiatrist, and father of said minors, died April 24, 1969.
Evelyn L. Schumacher (Evelyn) is the former wife of Schumacher and the mother of the minors. On July 1, 1963, she and Schumacher executed a property settlement agreement by which he contracted to pay $200 per month for the support of each of the minors.
In the subsequent divorce decree the agreement was approved and the parties ordered to perform its terms.
*149 Laura Mary was born on February 14, 1950, and Suzanne Lynne on April 20, 1951.
On July 3, 1969, Evelyn, on behalf of herself and the minors, filed a petition for a family allowance of $200 per month for each child alleging the contract provision and the divorce decree ordering compliance.
An ex parte order was filed on the same day (although dated July 2) fixing an allowance of $200 per month for each child commencing as of May 1, 1969, and to continue until further order of the court.
On September 4, 1969, City National Bank, as executor of the last will of Schumacher, filed a petition for an order vacating the order of July 3, 1969. The hearing of that petition was set for September 26.
The basis of the petition to set aside the earlier order was the property settlement agreement under which, it was alleged, Schumacher agreed to maintain life insurance policies in favor of Evelyn and the children so that the proceeds should satisfy his post-mortem obligation for child support.
The allegations of the petition, if true, would have supported a finding that the insurance proceeds were intended by the parties as a fund to furnish child support after the father's death.
The petition to set aside the order of July 3, 1969, was heard on January 6, 1970.
At the hearing the attorneys who had represented the respective parties in negotiating the property settlement agreement testified to conversations at which both husband and wife were present, at which was discussed the husband's concern that the support of the children should not be a burden upon his estate; his prospective insurance resources were balanced against the future liability for support based upon the then ages of the children, including a third child no longer dependent.
Schumacher's attorney testified to those matters in detail and was corroborated by Evelyn's attorney. Evelyn herself had only a hazy recollection of the negotiations leading up to the execution of the agreement.
The agreement listed the policies by name and amount. Schumacher agreed to maintain them, except as to two policies on which he was to apply only the cash reserve on account of premiums. Evelyn and the *150 children were to be beneficiaries. Of the policies on which Schumacher agreed to pay all premiums, there had been paid to Evelyn a total of $52,000, of which she and the three children were equal beneficiaries.
The property settlement agreement had included the following: "Husband hereby agrees to maintain policies lettered A through E as listed above, in full force and effect, and to maintain the Wife and the minor children of the parties as irrevocable equal beneficiaries thereunder for as long as they or any of them are entitled to receive support from Husband, and no further beneficiaries shall be added so long as Wife or any of the minor children are entitled to receive support from Husband, subject only to a change of beneficiary in the form of a trust. Said trust, among other things, shall provide in substance that payments are to be made in the amounts and in the manner provided in the court order existing at the time of death. Husband shall pay all premiums as and when due ..."
On April 15, 1970, an order was filed setting aside the order of July 3, 1969, nunc pro tunc as of that date. The order allowed and ordered payment out of the estate of fees for Evelyn's attorneys.[1]
(1a) Evelyn's contentions on appeal are that an agreement between the parents may not defeat the right of minor children to receive a family allowance for support under the Probate Code; and that the existence of insurance funds whose income would be insufficient to support the children may not deprive them of the right to a family support allowance because Probate Code section 682 does not provide for such denial of family support.
A specific ruling of our upper courts on the subject as applied to the right of children to a family allowance has not been cited or found.
Estate of Jameson, 224 Cal. App.2d 517 [36 Cal. Rptr. 802], held it was an abuse of discretion to deny an allowance to a minor child on the theory he had "a reasonable maintenance derived from other property" under Probate Code section 682, when all that he had were social security payments. The court reasoned an obligation to pay support under a divorce decree was not met by social security payments which were involuntary so far as the deceased father was concerned. As to the remedy of an action on a creditor's claim it was considered such a proceeding *151 would not supply immediate current need. (See also Estate of Goulart, 218 Cal. App.2d 260 [32 Cal. Rptr. 229, 6 A.L.R.3d 1380].)
In Estate of Barkdull, 275 Cal. App.2d 729 [80 Cal. Rptr. 317], an order for support of two minor children was affirmed although their mother was receiving social security for the children and as their guardian had received over $15,000 in proceeds from insurance on the father's life. No contention was made that there was an agreement the insurance was to furnish support or as to ownership of the policy. The appellant was relying upon Probate Code section 682, which is as follows: "If the widow, widower, or any minor child has a reasonable maintenance derived from other property, and there are other persons entitled to a family allowance, the allowance shall be granted only to those who have not such maintenance."
(2) In the case of a spouse, he or she may by contract, where the language is appropriate for the purpose, waive effectively for himself or herself the right to a family allowance during administration. (Estate of Zlaket, 180 Cal. App.2d 553 [4 Cal. Rptr. 450].)
(3) Where there has been no extrinsic evidence as to the meaning of the contract and the construction of the trial court was based solely upon the terms of the contract, the reviewing court is not bound by the interpretation of the trial court. (Estate of Wiedemann, 228 Cal. App.2d 362, 367 [39 Cal. Rptr. 496, 9 A.L.R.3d 944].)
In Estate of Wiedemann, supra, 228 Cal. App.2d 362, 367-368, the court stated: "Family allowances are strongly favored in the law. [Citations.] While, as pointed out above, they may be waived by contract [citation] whether the right has been thus surrendered in a particular case is a question of the interpretation of the contract involved. [Citation.] Where, as in the case at bench, the spouses have lived together until the husband's death under conditions that made him liable for her support until that time, the right should not be held to have been surrendered by an agreement between the spouses except by clear and explicit language [citations] and any uncertainty in the language of the agreement will be resolved in favor of the right [citations]." (See also Estate of Van Der Oef, 212 Cal. App.2d 155 [27 Cal. Rptr. 855].)
In logic it should be possible for a parent to make such provision for post-mortem support of a minor child as would relieve his estate of the obligation.
*152 (4) The right to the family allowance is an extension of the right to support. (Estate of Woodward, 230 Cal. App.2d 113, 116 [40 Cal. Rptr. 791, 12 A.L.R.3d 1134].)
(1b) If the intention of the parties to an agreement is clear that a certain fund was to insure the continued payment of child support upon the death of the father, and if the fund is maintained and is adequate for the purpose, the intention of the parties should be carried out. If there is a policy to the contrary, we are unaware of it.
Thus in the case at bench if the father could not enter into such an agreement with the belief it would be respected, he could have bargained to retain the insurance policies for himself and have made his estate the beneficiary.
In Taylor v. George, 34 Cal.2d 552 [212 P.2d 505], the deceased father of a minor child had in his will stated that a policy of insurance was intended to take care of his obligation to support the child. The court held the lower court had properly rejected a creditor's claim of the former wife for child support based upon an agreement and a divorce decree because the principal of the insurance proceeds fully covered all support payments to become due during the child's minority. Although the right of the child to an order for support under the Probate Code was not involved, the grounds for the decision strongly support the trial court's order in the case at bench.
In Nicholas v. Nicholas, 110 Cal. App.2d 349, 353 [242 P.2d 679], a trust for the support of a minor child was imposed upon property deeded to a divorced wife under a property settlement agreement for that purpose. Since the property was adequate for that purpose, the child's action against the father for support was not sustained. The court stated: "[W]here, pursuant to an agreement, means of supporting such child are turned over to the mother, and the latter agrees to maintain the child therefrom, we are not faced with an attempt by the father to evade his legally imposed duties. In the case at bar, respondent by his labors provided means of supporting his children. Unless such means be inadequate to provide the needed support and the parent entitled to custody cannot support the child, there is no cause of action in the child for the judgment here sought."
The property settlement agreement with the other evidence is clear that the intention of the parties was that the principal amount of the insurance proceeds was to take care of the father's obligation to support his children *153 after his death during their minority. Certainly the trial court's implied finding to that effect is supported by substantial evidence.
Since the actual fund is sufficient for that purpose, the father's estate should not be further charged for the same purpose.
(5) The court retained jurisdiction in proper circumstances to modify or terminate the order of July 3, 1969.
The court has jurisdiction to reduce the amount of an allowance previously ordered, or in proper circumstances to terminate it, and may make such reduction retroactive to the time the application for reduction or termination was filed and served. (Estate of Nelson, 167 Cal. 321 [139 P. 692]; Estate of Boselly, 179 Cal. 218 [176 P. 45]; Estate of Hoffman, 213 Cal. App.2d 635, 642 [29 Cal. Rptr. 60].)
However, such an order is not subject to collateral attack and remains in force until modified or terminated, in which case amounts accrued prior to the effective date of the order for termination are a charge upon the estate. (Estate of Murphy, 225 Cal. App.2d 224, 236 [37 Cal. Rptr. 205].)
In Estate of Murphy, supra, 225 Cal. App.2d 224, 234, the court said: "Appellant ... was, of course, obliged to divulge to the probate court her change in marital status in order that the probate court might have before it all of the circumstances and conditions affecting the needs of the members of decedent's family who were then entitled to family allowance. Her failure to do so amounted to a fraud upon the court."
A motion under Code of Civil Procedure section 473 is a direct attack. However, nothing indicates that the application to set aside the July 3 order was made under section 473. Fraud was not alleged or found. In Estate of Murphy, supra, 225 Cal. App.2d 224, the widow admitted she had no right to an allowance after her remarriage. Here the claim of the former wife on behalf of her children seems to have been accepted by the trial court as made in good faith, as evidenced by the allowance of attorney's fees. (See Estate of Hoffman, supra, 213 Cal. App.2d 635, 641.)
Accordingly, the court had the right only to terminate the allowance as of the date of the filing of the petition to set aside the order. It is beyond question that he would have done no less.
The order appealed from is modified to provide that the allowance *154 provided for in the order of July 3, 1969, should terminate as of September 4, 1969. In all other respects it is affirmed.
Each party shall pay its own costs of appeal.
Brown (Gerald), P.J., and Ault, J., concurred.
A petition for a rehearing was denied June 28, 1971.
NOTES
[1] The order is dated March 3. The minutes of January 16, 1970 show that the court announced its decision on that date.